**WO**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Erlan Moldogaziev,<br>Petitioner,<br>v.<br>John E Cantu, et al.,<br>Respondents. | No. CV-25-03265-PHX-MTL<br>**ORDER** |

Before the Court is Petitioner Erlan Moldogaziev's Amended Petition for Writ of Habeas Corpus. (Doc. 4.) Magistrate Judge James F. Metcalf issued a Report and Recommendation ("R&R"). (Doc 20.) The R&R recommends that Ground of Relief 4 of the Amended Petition be dismissed without prejudice for improper venue or denied as without merit. (*Id.* at 34.) As to all other grounds of relief, the R&R recommends denial. (*Id.* at 35.) Petitioner timely filed objections to the R&R. (Doc. 20.) Respondent did not file a response to Petitioner's objections.

**I.**

The R&R recounts the factual and procedural history of this case, including the underlying administrative proceedings. (Doc. 18 at 2-5.) Petitioner does not object to the R&R's description of the factual and procedural history. (Doc. 20.) The Court accepts and adopts the R&R's factual and procedural description. *United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003) (en banc).

. . . .

## II.

In reviewing an R&R, this Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). But district courts are not required to conduct "any review at all . . . of any issue that is not the subject of an objection." *Thomas v. Arn*, 474 U.S. 140, 149 (1985). "[T]he district judge must review the magistrate judge's findings and recommendations de novo *if objection is made*, but not otherwise." *Reyna-Tapia*, 328 F.3d at 1121 (emphasis in original). This de novo review applies only to "the portions of the [Magistrate Judge's] recommendations to which the parties object." *Klamath Siskiyou Wildlands Ctr. v. U.S. Bureau of Land Mgmt.*, 589 F.3d 1027, 1032 (9th Cir. 2009). Such objections must be "specific." Fed. R. Civ. P. 72(b)(2).

## III.

Petitioner raises several objections to the R&R. (Doc. 20.) None have merit, so the Court will overrule them and accept the R&R.

### A.

Petitioner first objects to the R&R's conclusion that Petitioner is properly treated as an "alien seeking admission" for purposes of 8 U.S.C. § 1225(b)(2)(A), notwithstanding the fact that Petitioner was paroled into the United States in September 2022. (Doc. 20 at 2.) Petitioner argues that his parole under 8 U.S.C. § 1182(d)(5)(A) and his resulting years of presence in the United States changed his status so that he can no longer be treated as an alien seeking admission. (*See id.* at 5-6, 9-10.)[1] The R&R, by contrast, concludes that because Petitioner entered the United States through parole, Petitioner's status as an alien seeking admission *cannot* change simply by virtue of his being present in the United States. (Doc. 18 at 17-19.) As a result, the R&R reasons, Petitioner is properly subject to

[1] Interspersed with Petitioner's argument about the legal effect of his parole is an argument that his parole was improperly revoked by Respondents. (*See* Doc. 20 at 4-5.) Petitioner did not raise this argument in his habeas petition or even in his reply to Respondents' response. The argument is therefore waived. *See Walden v. Shinn*, 990 F.3d 1183, 1197 (9th Cir. 2021) (declining to consider an argument omitted from the habeas petition); *Cacoperdo v. Demosthenes*, 37 F.3d 504, 507 (9th Cir. 1994) (declining to consider an argument first raised in the district court on a traverse that was limited to "present[ing] additional argument and legal authority").

mandatory detention under the terms of § 1225(b)(2)(A). (*Id.* at 25.)

The Court accepts the R&R's conclusion that Petitioner remains classified as an alien seeking admission and therefore is properly subject to § 1225(b). Central to the Court's conclusion is the fact that Petitioner was paroled into the United States under § 1182(d)(5)(A).[2] Parole under § 1182(d)(5)(A) ("humanitarian parole") is available only for aliens "applying for admission to the United States." 8 U.S.C. § 1182(d)(5)(A); *see Jennings v. Rodriguez*, 583 U.S. 281, 288 (2018). Humanitarian parole is therefore the mechanism by which aliens who are detained while seeking to enter the United States—that is, aliens detained under the Government's § 1225(b) detention authority—may be temporarily released from detention. *See Jennings*, 583 U.S. at 287-88; *Rodriguez Vazquez v. Bostock*, No. 25-6842, — F.4th —, —, 2026 WL 2196424, at *14-*15 (9th Cir. July 30, 2026) (treating § 1225(b)'s use of the phrase "seeking admission" as synonymous with "applying" for admission and defining "seeking admission" as "seeking entry at the border"). Because Petitioner entered the United States through humanitarian parole, it must be the case, then, that he was first detained at the border under the Government's § 1225(b) detention authority. And as is well established, an alien detained pursuant to § 1225(b) is not entitled, at least as a statutory matter, to a bond hearing. *Rodriguez Vazquez*, 2026 WL 2196424, at *7.

The fact that Petitioner was originally detained pursuant to § 1225(b) is outcome determinative. This is because humanitarian parole freezes a paroled alien's status as an alien "seeking entry at the border." Section 1182(d)(5)(A) provides that humanitarian parole:

> shall not be regarded as an admission of the alien and when the purposes of such parole shall, in the opinion of the Secretary of Homeland Security, have been served the alien shall forthwith return or be returned to the custody from

---

[2] Petitioner has not always been consistent over whether he entered the United States without inspection, (*see, e.g.*, Doc. 17 at 8), was paroled in under 8 U.S.C. § 1226(a), (*see, e.g.*, Doc. 4 at 23), or was paroled in under § 1182(d)(5)(A), (*see, e.g.*, *id.* at 13). The R&R concludes that Petitioner was paroled under § 1182(d)(5)(A) because the Petitioner expressly alleged that and his allegation was supported by evidence submitted by Respondents. (Doc. 18 at 3 n.2.) Petitioner does not object to that conclusion and, indeed, now insists upon it. (Doc. 20 at 3.)

> which he was paroled and thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States.

This language strongly suggests that once an alien's humanitarian parole terminates, the alien is returned to the *status quo ante*, detention under § 1225(b) as an alien seeking entry into the United States.

Such a reading is consistent with a legal fiction, known as the "entry fiction," that has been long recognized by the Supreme Court. In *Leng May Ma v. Barber*, 357 U.S. 185 (1958), the Supreme Court considered whether an alien who had been paroled into the United States was eligible for withholding of deportation under a statute that limited that benefit to aliens "within the United States." 357 U.S. at 185-86. The alien in *Leng May Ma* had been paroled through an administrative practice that was subsequently codified at § 212(d)(5) of the Immigration and Nationality Act ("INA") and which was substantively the same as the language now codified at § 1182(d)(5)(A). *Id.* at 188 & n.5. The Supreme Court held that the alien's parole "did not alter her status as an excluded alien or otherwise bring her 'within the United States.'" *Id.* at 186. The Supreme Court added, "[f]or over a half century this Court has held that the detention of an alien in custody pending determination of his admissibility does not legally constitute an entry though the alien is physically within the United States." *Id.* at 188. As the Supreme Court has made clear, then, an alien such as Petitioner, who has been paroled into the United States under § 1182(d)(5)(A) has never, in the eyes of the law, entered the United States. Petitioner therefore continues to seek entry into the country. And that compels the conclusion that Petitioner is still subject to mandatory detention under § 1225(b) as an alien "seeking admission."

Despite the authority in favor of this conclusion, several district courts have resisted the conclusion.[3] The Court is unpersuaded by the reasoning of these decisions, as they do

[3] *See, e.g.*, *Drozdov v. Lyons*, No. CIV-26-365-SLP, 2026 WL 1470929, at *2 (W.D. Okla. May 26, 2026); *Capote Zamora v. Mullin*, No. 26-cv-00538-PAB, 2026 WL 1026810, at *2-*3 (D. Colo. Apr. 16, 2026); *Bekzada v. Fields*, No. 26-57-DLB, 2026 WL 696555, at *2-*3 (E.D. Ky. Mar. 12, 2026); *Qasemi v. Francis*, No. 25-cv-10029 (LJL), 2025 WL

not give *Leng May Ma* the controlling weight it requires. Several of the decisions do not mention *Leng May Ma* at all. *See, e.g.*, *Drozdov*, 2026 WL 1470929; *Capote Zamora*, 2026 WL 1026810; *Qasemi*, 2025 WL 3654098. Another cites *Leng May Ma* only for the general proposition that the immigration laws treat those who have entered the United States differently from those who have not, a proposition that begs the crucial question—whether the petitioner-alien ever entered the United States. *Bekzada*, 2026 WL 69655, at *7. Of the cases this Court has reviewed, only the decision of the District Court for the District of Columbia in *Coalition for Human Immigrant Rights* provides any rationale for disregarding the Supreme Court's teaching in *Leng May Ma*. Yet that court's rationale is unsatisfactorily perfunctory, stating nothing more than that "*Leng May Ma* interpreted different statutory language ('within the United States') in a different, since-replaced provision of the INA." 805 F. Supp. 3d at 86. While technically true, these minor differences are immaterial to the general rule announced in *Leng May Ma*. To reiterate, *Leng May Ma* established that physical presence in the United States by means of humanitarian parole—again, codified at INA § 212(d)(5) in functionally identical terms as the current § 1182(d)(5)(A)—does not constitute an entry into the United States. And once that rule is accounted for, it follows that an alien who has, in the eyes of the law, always remained at the threshold of the United States, is an applicant for admission who is "seeking entry at the border." *Rodriguez Vazquez*, 2026 WL 2196424, at *15. Thus, aliens, such as Petitioner, who have had their humanitarian parole revoked are now properly subject to mandatory detention under § 1225(b).

This conclusion is not affected by language in *Rodriguez Vazquez* rejecting the proposition that an alien present in the interior of the United States "remains in the perpetual state of seeking admission (that is, seeking *entry*)." 2026 WL 2196424, at *14.

---

3654098, at *9-*11 (S.D.N.Y. Dec. 17, 2025); *Coal. for Humane Immigrant Rights v. Noem*, 805 F. Supp. 3d 48, 85-89 (D.D.C. 2025), *vacated on other grounds sub nom., Coal. for Human Immigrant Rights v. Mullin*, No. 25-5289, — F.4th —, 2026 WL 2317908 (D.C. Cir. Aug. 11, 2026) (per curiam). *But see, e.g.*, *Pacheco v. De Anda-Ybarra*, No. 1:26-cv-02173-KG-JFR, 2026 WL 2255173, at *3 (D.N.M. Aug. 5, 2026); *Rana v. Genalo*, No. 26 Civ. 849 (JPC), 2026 WL 1863815, at *5-*7 (S.D.N.Y. June 29, 2026); *Aboga v. Wesling*, No. 26-CV-10178-NMG, 2026 WL 632538, at *2 (D. Mass. Mar. 6, 2026); *Faqirzada v. Rokosky*, No. 25-16639 (MAS), 2026 WL 63614, at *2 (D.N.J. Jan. 8, 2026).

*Rodriguez Vazquez* dealt with aliens who were not subject to the entry fiction. That is, by all accounts, the aliens in *Rodriguez Vazquez* had entered the United States, both physically *and* as a matter of law. For those aliens, then, it would make no sense to argue that they are still "seeking admission" under § 1225(b)(2)(A) when that would mean they are still "seeking entry at the border." But to suggest that *Rodriguez Vazquez* imposes a time limit on the entry fiction would contradict clear language from the Supreme Court to the contrary. As the Supreme Court has recently observed, "aliens who arrive at ports of entry—even those paroled elsewhere in the country *for years* pending removal—are 'treated' for due process purposes 'as if stopped at the border.'" *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 139 (2020) (quoting *Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206, 215 (1953)) (emphasis added). Accordingly, the fact that Petitioner was physically present in the interior of the United States since 2022 does nothing to alter the fact that, as a legal matter, he has never entered the United States.[4]

All of the above, therefore, supports accepting the R&R's conclusion that Petitioner continues to "seek[ ] admission" for the purposes of § 1225(b), notwithstanding the fact that Petitioner was paroled into the United States and was physically present inside the United States. As a result, Petitioner's first objection is overruled.

**B.**

Petitioner next objects to the R&R's conclusion that his parole "has no effect on his detention authority or status." (Doc. 20 at 2.) The Court does not see a clear distinction between this objection and Petitioner's first objection.[5] The Court is left to infer based on Petitioner's mention of "detention authority" that what Petitioner means to attack is the notion that he could be detained, while in the United States, pursuant to a warrant issued

[4] Petitioner cites one case to argue against the R&R's conclusion that Petitioner has never, as a legal matter, entered the United States. (Doc. 20 at 5-6.) However, Petitioner's cited case, *Sampiao v. Hyde*, 799 F. Supp. 3d 14 (D. Mass. 2025), is inapposite. As Petitioner's block quotation from *Sampiao* makes clear, the alien in *Sampiao* was not paroled into the United States under § 1182(d)(5)(A). *Id.* at 30 n.12. Unlike this case, then, the Government could not argue in *Sampiao* that the alien had never entered the United States and therefore remains subject to mandatory detention under § 1225(b)(2).

[5] Unfortunately, in reviewing Petitioner's filings, the Court has observed that they often lack the clarity necessary to be effective.

under § 1226(a) and then have his detention later recharacterized as occurring under § 1225(b)(2)(A). (*See* Doc. 20 at 7-10; Doc. 18 at 20.) As Petitioner would seemingly have it, by detaining him once he was in the United States pursuant to § 1226(a), the Government forfeited its ability to detain Petitioner under § 1225(b).

The R&R appears not to have thought the issue of how Petitioner was most recently detained to be of much importance, because the R&R does not address it. The Court agrees. The fact that Petitioner's current detention was initially premised on § 1226(a) does not change the conclusion that Petitioner is properly subject to mandatory detention under § 1225(b).

This conclusion rests on the fact that Petitioner was paroled under § 1182(d)(5)(A). As discussed at length above, § 1182(d)(5)(A) provides that once an alien's humanitarian parole is revoked, the alien returns to the *status quo ante*. Recall, moreover, that an alien paroled under § 1182(d)(5)(A) would have been, but for the grant of parole, subject to mandatory detention under § 1225(b). *See Jennings*, 583 U.S. at 288. Because § 1182(d)(5)(A) commands that an alien whose parole is revoked be "returned to the custody from which he was paroled," it follows that such an alien must be returned to mandatory detention. To allow an alien whose parole has been revoked to be placed instead in § 1226(a)'s more permissive detention scheme would make the words "from which he was paroled" superfluous. If, as some courts have argued, § 1182(d)(5)(A)'s mention of a return to custody merely requires that an alien be placed under some vague restraint on liberty "not shared by the public generally," a restraint that "does not necessarily mean physical custody," *Qasemi*, 2025 WL 3654098, at *10, it is unclear why Congress would have felt the need to specify that the return be to the custody "*from which [the alien] was paroled*." Instead, Congress could have drafted § 1182(d)(5)(A) to simply require that an alien whose parole has been revoked be "returned to custody." Yet that is not what Congress did. "[A] statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant." *TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001) (quoting *Duncan v. Walker*, 533 U.S. 167, 174

(2001)); *see also Williams v. Taylor*, 529 U.S. 362, 404 (2000) (describing as a "cardinal principle of statutory construction that we must 'give effect, if possible, to every clause and word of a statute'" (quoting *United States v. Menasche*, 348 U.S. 528, 538-39 (1955))). By interpreting § 1182(d)(5)(A) to require that an alien who was originally detained under § 1255(b) be returned to mandatory detention once his or her humanitarian parole is revoked, the Court gives independent weight to the words "from which the alien was paroled"—they signal a one-to-one correspondence between the alien's custody pre- and post-parole. And if this is what § 1182(d)(5)(A) mandates, then it cannot be the case that the mere issuance of a warrant under § 1226(a) is sufficient to force the Government to forfeit the possibility of re-detaining an alien pursuant to § 1225(b). *See Vargas Lopez v. Trump*, 802 F. Supp. 3d 1132, 1142 n.4 (D. Neb. 2025) (finding "no legal reason the government could not add a request to detain [an alien] under § 1225(b)(2) at the IJ detention hearing" despite the fact that the Government, after revoking parole, first sought detention under § 1226(a)).

The cases Petitioner cites in opposition to the R&R's conclusion are even less persuasive than *Qasemi*, mostly because they are inapposite. Take the first case Petitioner cites, *Sampiao*. As discussed above, *Sampiao* is not a case where an alien was granted humanitarian parole. 799 F. Supp. 3d at 30 n.12. Accordingly, § 1182(d)(5)(A)'s mandate that the alien be "returned to the custody from which he was paroled" does not apply. The same goes for Petitioner's second cited case, *G.S. v. Bostock*, No. 2:25-cv-01255-JNW-TLF, 2025 WL 3014274, at *4 (W.D. Wa. Oct 8, 2025), *report and recommendation adopted sub nom. G.S. v. Bostock*, No. 2:25-cv-01255-JNW-TLF, 2025 WL 3014035 (W.D. Wa. Oct. 28, 2025). And the same goes for his third case, *Bautista v. Santacruz*, 813 F. Supp. 3d 1084, 1095 (C.D. Cal. 2025) (describing plaintiff class members as aliens who entered the United States without inspection and who were not apprehended at arrival). Given the material factual differences between Petitioner's cited cases and his own case, the cited cases do nothing to suggest that the § 1226(a) warrant used to detain Petitioner most recently forecloses the Government from subsequently seeking to detain him under

§ 1225(b).

Accordingly, Petitioner's second objection to the R&R is overruled. With the overruling of the first and second objections, the Court concludes that denial of Grounds of Relief 1, 2, 3, and 5 is warranted, as Petitioner's only remaining objection involves an APA challenge.[6]

**C.**

Petitioner finally objects to the R&R's conclusion that Petitioner's APA challenge in Ground 4 must be dismissed without prejudice for improper venue under 8 U.S.C. § 1252(e)(3)(A) or denied as meritless. (Doc. 20 at 2, 10-15.) The Court accepts the R&R's conclusion that Ground 4 must be dismissed without prejudice, but on the alternative ground that Petitioner lacks Article III standing to raise his challenge.

Ground 4 of Petitioner's Amended Petition for Writ of Habeas Corpus raises a violation of the APA's notice-and-comment rulemaking procedures with regard to Respondents' "adoption of their no-bond policy." (Doc. 4 at 17-18.) Petitioner identifies two agency actions that reflect this change in policy. First, he points to an Immigration and Customs Enforcement ("ICE") policy titled "Interim Guidance Regarding Detention Authority for Applicants for Admission." (*Id.* at 8.) The ICE policy interprets the INA to require that aliens who entered the United States without inspection be subjected to mandatory detention under § 1225(b)(2)(A). *Rodriguez Vazquez*, 2026 WL 2196424, at *8. Second, he points to a decision from the Board of Immigration Appeals ("BIA"), *Matter of Yajure Hurtado*, 29 I&N Dec. 216 (BIA 2025). (Doc. 4 at 13.) *Yajure Hurtado* adopted the ICE policy's interpretation, holding that "[i]mmigration [j]udges lack authority to hear bond requests or to grant bond to aliens . . . who are present in the United States without admission." 29 I&N Dec. at 225; *see Rodriguez Vazquez*, 2026 WL 2196424, at *8.[7]

[6] Although framed as an APA challenge, the R&R properly concludes that Ground 3 "is merely duplicative of [Petitioner's] direct habeas claims in Grounds 1 and 2" that § 1225(b) does not properly govern his detention. (Doc. 18 at 27.) Petitioner does not seem to contest this. He does not argue, for example, that there is any reason to analytically distinguish Ground 3 from Grounds 1 and 2. As the Court has now rejected Petitioner's argument with regard to Grounds 1 and 2, it follows that Ground 3 must fail.

[7] *Yajure Hurtado* has since been vacated by *Bautista v. Santacruz*, 820 F. Supp. 3d 1016, 1030 (C.D. Cal. 2026).

Petitioner makes no argument, however, about why the APA's notice-and-comment rulemaking procedures apply to either of these agency actions. The APA provides that notice-and-comment rulemaking procedures do not apply "to interpretative rules, general statements of policy, or rules of agency organization, procedure, or practice" unless "notice or hearing is required" by a different statute. 5 U.S.C. § 553(b)(4)(A). It is far from obvious that either the ICE policy or *Yajure Hurtado* are subject to the APA's notice-and-comment rulemaking procedures. And Petitioner does not point to any alternative statute that would require either the ICE policy or *Yajure Hurtado* to go through notice and comment.

More fundamentally, however, Petitioner does not demonstrate how he has standing to challenge the procedure by which Respondents' "no-bond policy" was adopted. Article III of the United States Constitution "requires a litigant to have 'standing' to invoke the power of a federal court." *Iten v. Los Angeles*, 81 F.4th 979, 984 (9th Cir. 2023). Because this is a constitutionally imposed jurisdictional limit on the power of federal courts, "federal courts have a duty to raise, sua sponte, questions of standing before addressing the merits." *Id.* Standing breaks down into three elements: (1) a plaintiff must have suffered an injury in fact, (2) that injury must have been caused by the conduct the plaintiff complains about, and (3) it must be likely that the injury will be redressed by a decision in the plaintiff's favor. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 506-61 (1992). "The party invoking federal jurisdiction bears the burden of establishing these elements." *Id.*at 561.

The crucial standing question posed by Petitioner's APA challenge is whether Respondents' policy change without notice and comment, as instantiated by the ICE policy and *Yajure Hurtado*, caused Petitioner the injury he complains about—mandatory detention. As the Court's earlier discussion indicates, the answer is no. Under the joint terms of §§ 1182(d)(5)(A) and 1225(b), Petitioner, as an alien granted humanitarian parole, has always been subject to mandatory detention upon the revocation of his parole. *Supra*, Section III.A. Therefore, even if the ICE policy and *Yajure Hurtado* had never come into existence, Petitioner would be in the same bind that he is in now. As discussed above,

§ 1182(d)(5)(A) compels such an outcome, even in unusual cases where the Government, for whatever reason, initially seeks to re-detain a paroled alien under § 1226(a). *Supra*, Section III.B. It is also for this reason that the Ninth Circuit's decision in *Rodriguez Vazquez*, which expressly considered a challenge to the policy change announced in the ICE policy and *Yajure Hurtado*, does not control the outcome in this case. 2026 WL 2196424, at *8.

In sum, Petitioner's notice-and-comment challenge runs up against "[t]he fundamental problem" that, absent the ICE policy and *Yajure Hurtado*, the joint commands of §§ 1182(d)(5)(A) and 1225(b) would have "cost him his [opportunity for a bond hearing] anyway." *Trans. Workers Un. of Amer., AFL-CIO v. Trans. Sec. Admin.*, 492 F. 3d 471, 475 (D.C. Cir. 2007). The fact that Respondents did not effect their policy change through notice-and-comment rulemaking did nothing to injure Petitioner. As a result, the Court lacks jurisdiction to consider Petitioner's APA challenge. "Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause." *Ex parte McCardle*, 74 U.S. (7 Wall.) 506, 514 (1868). Ground 4 is dismissed without prejudice. *See Barke v. Banks*, 25 F.4th 714, 721 (9th Cir. 2022) ("[D]ismissals for lack of Article III jurisdiction must be entered without prejudice because a court that lacks jurisdiction is powerless to reach the merits." (citation modified)).

Having overruled all of Petitioner's objections to the R&R, the Court will accept and adopt the R&R's recommendation to deny Grounds 1, 2, 3, and 5 of the Amended Petition. (Doc. 4.) The Court will accept and adopt the R&R's recommendation to dismiss Ground 4 without prejudice, but on the alternative ground that the Court lacks Article III jurisdiction to decide Petitioner's APA challenge.

## IV.

**IT IS THEREFORE ORDERED** that Petitioner's Amended Objections (Doc. 20) are **OVERRULED**, and the Report and Recommendation (Doc. 18) is **ACCEPTED** and **ADOPTED**.

**IT IS FURTHER ORDERED** that Ground 4 in Petitioner's Amended Petition for Writ of Habeas Corpus (Doc. 4) is **DISMISSED** without prejudice.

**IT IS FURTHER ORDERED** that the remainder of the Amended Petition (Doc. 4) is **DENIED** with prejudice.

**IT IS FINALLY ORDERED** directing the Clerk of Court to enter a judgment of dismissal and close this case.

Dated this 18th day of August, 2026.

Michael T. Liburdi
United States District Judge